**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ALAN SCHINTZIUS, et al., | ) | |
| | ) | |
| Plaintiffs-Petitioners, | ) | |
| v. | ) | Civil Action No. 3:16-cv-741 |
| | ) | |
| J. KIRK SHOWALTER, et al., | ) | |
| | ) | |
| Defendants-Respondents. | ) | |

**MEMORANDUM IN OPPOSITION TO MOTION**
**FOR A TEMPORARY RESTRAINING ORDER**

The defendants, J. Kirk Showalter, C. Starlet Stevens, Cecilia A.B. Dabney, and Ophelia Daniels (collectively, the "Defendants"), state as follows as their memorandum in opposition to motion for a temporary restraining order:

**I.     Summary of Pertinent Facts**

If necessary, the defendants believe the evidence will establish the following legally-operative facts related to the plaintiffs' alleged constitutional injuries and their related application for a temporary restraining order ("TRO"):

**a. Overview of petition requirements for independent candidates seeking ballot access**

1.     To obtain ballot access, an independent candidate for mayor of the City of Richmond is required to submit a petition "signed by the number of qualified voters specified" and "listing the residence address of each such voter." Va. Code Ann. § 24.2-506(A); *see also* Richmond City Charter § 3.01.1 (requiring mayoral candidates to file "a petition containing a minimum of 500 signatures of qualified voters of the city, to include at least 50 qualified voters from each of the nine districts). Candidates may begin circulating petitions on or after "January 1 of the year in which the election is held." *Id.*

2. Per Code § 24.2-503, candidate petitions were due no later than 7:00 p.m. on June 14, 2016. However, candidates are free to submit their petitions for review prior to that date. By statute, a candidate may submit a written request for notification of "any irregularity in the . . . petitions which can be corrected prior to the filing deadline." Va. Code Ann. § 24.2-503(D).

3. In practice, the City of Richmond Electoral Board and Registrar provide a twice weekly "count in progress" to independent candidates to keep candidates informed as to "whether or not a candidate has met the ballot requirements." (Memorandum from the Electoral Board to Independent Candidates, Dec. 22, 2015.) Thus, a candidate is empowered to submit his or her petition sufficiently in advance of the filing deadline, discovery any deficiencies, and take corrective action. However, a candidate who files his petition on the last day has no such opportunity.

4. Following the June 14, 2016 filing deadline, the Registrar "shall forward the name of any candidate who failed to qualify with the reason for his disqualification" to the Department of Elections. Va. Code Ann. § 24.2-612. At the same time, the Registrar must also give notice of such disqualification to each candidate via email or regular mail. *Id.*

5. A candidate disqualified by reason of a his or her petition "not containing the minimum number of qualified voters" may "appeal that determination within five calendar days of the issuance of the notice of disqualification." Va. Code Ann. § 24.2-506(C). The appeal "shall be heard within five business days of its filing." *Id.* "The consideration on appeal shall be limited to whether or not the signatures on the petitions that were filed were reasonably rejected according to this title and the uniform standards approved by the State Board for the review of petitions." *Id.*

6. As required by Code, the State Board of Elections has promulgated regulations governing the appeal of a candidate's disqualification. Under 1 VAC 20-50-30(G), a candidate <u>must</u>, at least two business days prior to the date of the appeal, submit a list of rejected signatures to be reviewed, and the reason for each signature's reconsideration. A candidate <u>may</u> also submit additional documents and affidavits in support of the appeal. *Id.*

7. "All determinations of the board before which the appeal is being heard shall be considered final and not subject to further appeal." 1 VAC 20-50-30(I).

**b. Facts specifically related to Alan Schintzius' candidacy for Mayor of the City of Richmond**

8. On the petition deadline, June 14, 2016, Alan Schintzius ("Schintzius") submitted his petition for ballot access as an independent candidate in the November 2016 election for Mayor of the City of Richmond.

9. On June 21, 2016, J. Kirk Showalter, General Registrar for the City of Richmond, ("Showalter") sent written notice of disqualification to Schintzius stating that his petitions failed to satisfy the statutory requirements for qualification as independent candidate. Namely, Schintzius was required to obtain, *inter alia*, 50 signatures of qualified voters from Richmond's Eighth Council District, but Schintzius had obtained only 43.

10. On June 27, 2016, Schintzius noted his appeal; he identified nine (9) signatures for review ("Review Signatures"); and he provided affidavits in support of his appeal.

11. The Review Signatures include those of Antwanette Brown, Annquinnette Kenney, and Sharon Smith. However, Korvel Mabry, Phillip Ricks, and Chevis Warren were not identified by Schintzius as required by 1 VAC 20-50-30(G).

12. On June 30, 2016, the Richmond Electoral Board convened an appeal hearing to consider Schintzius' appeal. As a result of the appeal, it was determined that three (3) of the

Review Signatures belonged to qualified voters, but this result still left Schintzius four (4) votes short of the fifty (50) signature requirement for Richmond's Eighth District.

13. The appeal hearing was recorded. The audio recording of that hearing establishes—contrary to the allegations in the Complaint—that Schintzius was afforded an opportunity to be heard, and that he exercised that right. Indeed, Showalter specifically requested, twice, that Schintzius provide the page and line number for Sharon Smith's signature. Schintzius spoke at length at the hearing, though he presented no further evidence.

### c. Prejudice to the defendants in the event this Court were to enjoin further preparations for the upcoming November 2016 election

14. Paper ballots were supposed to be printed this weekend (i.e. September 10 and 11, 2016) by an out-of-state vendor, but that process has been put on hold due to the September 12, 2016 hearing.

15. Paper ballots are obviously needed to comply with the statutory requirement that absentee ballots be mailed no later than 45 days before the election, which date is September 23, 2016. Va. Code Ann. §§ 24.2-612, -706. The City of Richmond is ordering 28,750 ballots for absentee voting, and the Registrar requires <u>at least</u> two days' lead time to (i) certify the ballots per Code § 24.2-618, (ii) package and verify ballots, and (iii) prepare absentee-ballot packages for mailing.

16. All voting equipment must also be final tested and sealed on or before September 20, 2016. Va. Code Ann. §§ 24.2-632, -634. This cannot be done without the final ballot in hand, because the programming for the voting equipment is derivative of the programming for the ballot. Thus, without a test ballot, the Registrar cannot timely program and seal the voting equipment.

17. Before the Electoral Board can final test and seal the equipment, the Registrar must obtain the equipment program from the vendor along with test ballots. Three days, September 15, 16, and 18,[1] are set aside for logic and accuracy testing of the ballots and equipment, prior to the Electoral Board certification on September 19 and 20.

18. This means that the equipment program and final ballot must be in hand by close of business on September 14, 2016. Because an out-of-town vendor must print and ship the ballots, the final ballot and equipment program would ideally be complete as of this writing, but certainly no later than September 12, 2016.

19. Any further delay in the printing of the ballots would be highly prejudicial to the preparation for the November 2016 election, and would put the Registrar and the Electoral Board in jeopardy of missing the statutory 45-day mailing requirement for absentee ballots.

**II.     Legal Standard**

To qualify for preliminary injunctive relief, the plaintiff must establish (1) a likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) the balance of the equities favors the plaintiffs; and (4) an injunction serves the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Mandatory injunctive relief, such as a demand that the Court require the defendants to place a candidate on the ballot, "should only be granted in those circumstances when the exigencies of the circumstances demand such relief." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). "[A] mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of some kind." *Id.*; *accord Perry v. Judd*, 840 F. Supp. 2d 945, 950 (E.D. Va. 2012).

---

[1] The voting equipment staff is in new officer training on September 17, 2016, and they are accordingly unavailable to work on the voting equipment on this date.

### III. Argument

#### a. The plaintiffs' claim barred by laches

"Laches is an equitable doctrine that precludes relief when a plaintiff has delayed brining suit to the detriment of the defendant." *Perry*, 840 F. Supp. 2d at 950. Laches "penalizes a litigant for negligent or willful failure to assert his rights." *Id.* at 953 (quoting *Valmor Prods. Co. v. Standard Prods. Corp.*, 464 F.2d 200, 204 (1st Cir. 1972)). The defense of laches has two elements: (1) "lack of diligence by the party against whom the defense is asserted"; and (2) "prejudice to the party asserting the defense." *Id.* (citations omitted). "Equity demands that those who would challenge the legal sufficiency of administrative decisions concerning time sensitive public . . . projects do so with haste and dispatch." *Id.* at 950 (quoting *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989)); *see also Marshall v. Meadows*, 921 F. Supp. 1490, 1494 (E.D. Va. 1996) ("The Fourth Circuit is especially mindful of laches in the context of an impending vote.").

Schintzius has failed to exercise due haste in seeking ballot access in the November election. Though he had more than six months to collect petition signatures he did not submit his petition until the last possible day. A review of the petition, attached to the complaint, shows that Schintzius did not begin circulating petitions until March 27, 2016, and that a substantial portion of the petition signatures were obtained within weeks of the due date. Had Schintzius acted sooner, he would have learned of the shortage of qualified signatures in the Eighth District with time to obtain additional signatures.

Having failed to do this, Schintzius' only option, as of June 21, 2016, was to pursue an appeal. The appeal proceedings ended on June 30, 2016. By this date the rights of the plaintiffs were clearly fixed: Schintzius, having failed to come forward with sufficient evidence to show

that he obtained the requisite number of signatures, was finally determined to be disqualified; and the remaining plaintiffs knew that their signatures had not been counted. Armed with these facts, the plaintiffs waited fifty-four (54) days to file this lawsuit, pushing the adjudication of this TRO to twelfth hour of the election preparation.

Having already delayed the printing of absentee ballots in deference to this Court's hearing schedule, it would be an extraordinary hardship to the Registrar and the Electoral Board to further delay preparation for the looming deadlines. As of the date of the hearing on the plaintiffs' motion, September 12, 2016, we will be a mere eight (8) days from the Electoral Board's deadline to certify the voting equipment and eleven (11) days from the statutorily-mandated deadline for the mailing absentee ballots. During this short period, there is a tremendous amount of work to accomplish, all of which requires—at a minimum—a final ballot proof and electronic media derived from the final ballot.

Consequently, we expect the evidence to show that the defense of laches is appropriate in light of the foregoing circumstances, and ask the Court to sustain this defense and deny the motion for a TRO.

### b. 42 U.S.C. § 1983 is not an appropriate vehicle for seeking federal intervention into the administration of state election procedures

"Circuit courts have uniformly declined to endorse action under § 1983 with respect to garden variety election irregularities." *Hutchinson v. Miller*, 797 F.2d 1279, 1283 (4th Cir. 1986) (Wilkinson, J.); *accord Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978); *Welch v. McKenzie*, 765 F.2d 1311 (5th Cir. 1985); *Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980); *Hennings v. Grafton*, 523 F.2d 861 (7th Cir. 1975); *Pettengill v. Putnam County R-1 School District*, 472 F.2d 121 (8th Cir. 1973); *Powell v. Power*, 436 F.2d 84 (2d Cir. 1970). This is because "[t]he constitution anticipates that the electoral process is to be largely controlled by the

states and reviewed by the legislature." *Hutchinson*, 797 F.2d at 1283; *see also White-Battle v. Democratic Party of Va.*, 323 F. Supp. 2d 696, 705 (E.D. Va. 2004) *aff'd* 2005 U.S. App. LEXIS 11892 (4th Cir. June 21 2005) (per curiam). "[T]he general attitude of courts asked to consider election disputes, *whatever the relief sought*, has been one of great caution. Intervention has come only in rare and extraordinary circumstances, for courts have recognized and respected the delegation of such disputes to other authorities." *Hutchinson*, 797 F.2d at 1287 (emphasis added). This includes equitable relief, which "has been properly called a 'drastic if not staggering' intrusion of the federal courts, and 'therefore a form of relief guardedly exercised.'" *Id.* (quoting *Bell v. Southwell*, 376 F.2d 659, 662 (5th Cir. 1967)). Consequently, courts have "repeatedly refused to intervene in routine election disputes, acting instead only in instances of 'patent and fundamental unfairness' that 'erode the democratic process.'" *Id.* (quoting *Hendon v. N.C. State Bd. of Elections,* 710 F.2d 177, 182 (4th Cir. 1983)). "Whether [an] irregularity amounts to a constitutional claim depends on its severity, whether it was intentional or more of a negligent failure to carry out properly the state election procedures, and whether it erodes the democratic process." *Hendon*, 710 F.2d at 182.

In *Hutchinson*, the United States Court of Appeals for the Fourth Circuit explained the policy behind this rule as follows:

> We further believe that federal courts are ill-equipped to monitor the details of elections and resolve factual disputes born of the political process. As one court has noted, "were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, election cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law." Elections are, regrettably, not always free from error. Voting machines malfunction, registrars fail to follow instructions, absentee ballots are improperly administered, poll workers become over-zealous, and defeated candidates are, perhaps understandably, inclined to view these multifarious opportunities for human error in a less than charitable light. Quite apart from the serious problems of federalism and separation of powers problems raised by these tasks, we find

> sifting the minutiae of post-election accusations better suited to the factual review at the administrative and legislative level, where an awareness of the vagaries of politics informs the judgment of those called upon to review the irregularities that are inevitable in elections staffed largely by volunteers.

*Hutchinson*, 797 F.2d at 1286–87 (quoting *Powell v. Power*, 436 F.2d 84, 86 (2d Cir. 1970)).

The United States District Court for the Eastern District of Virginia's decision in *White-Battle v. Democratic Party of Virginia*, 323 F. Supp. 2d 696 (E.D. Va. 2004), *aff'd* 2005 U.S. App. LEXIS 11892 (4th Cir. June 21 2005) (per curiam) (unpublished), is illustrative. In *White-Battle*, the plaintiff sought to become the Democratic nominee in the election for the Clerk of the Norfolk Circuit Court. *Id.* at 698. The plaintiff filed all necessary paperwork with the General Registrar for the City of Norfolk. *Id.* The plaintiff believed the nomination committee would select a nominee on May 21, 2003, but subsequently learned that the committee selected a candidate in March 2003 without publication of a notice that it would hold a caucus on that date. *Id.* The plaintiff filed an action under 42 U.S.C. § 1983 seeking prospective relief on the grounds that (1) the selection meeting was contrary to Virginia law and (2) several election-day irregularities undermined the legitimacy of the election results, including malfunctioning voting machines and improper vote counting procedures. *Id.* Following *Hutchinson*, the court dismissed the action, holding that federal courts have a "'significant duty . . . to preserve constitutional rights in the electoral process,'" but that this responsibility is limited to "'the general application of laws and procedures, not the particulars of election disputes.'" *Id.* at 705 (quoting *Hutchinson*, 797 F.2d at 1283). The court noted that examples of subjects of federal court intervention include "class-based restrictions on the right to vote, dilution of votes through malapportionment, and enforcing the Voting Rights Act to ensure equal voting regardless of race." *Id.* The court further noted that, to contest the minutiae of election administration, the plaintiff must apply to the

circuit courts of the Commonwealth for whatever remedies are provided under state law. *Id.* at 706.

As in *White-Battle*, Counts I and II of the Complaint seek federal intervention into the City of Richmond mayoral election under 42 U.S.C. § 1983 for alleged mistakes occurring in the administration of a local election. These claims do not pertain to the "general application of laws and procedures;" rather, they seek redress for a dispute over the manner in which the General Registrar tabulates petition signatures under the policies and procedures promulgated by the State Election Board. Moreover, there is no allegation of fraud or intentional misconduct against the General Registrar. This is simply not the kind of claim that is susceptible of federal intervention under 42 U.S.C. § 1983, and this Court should accordingly dismiss Counts I and II of the Complaint with prejudice.

The Complaint falls short of articulating any statute or regulation that raises a substantial First Amendment question, instead focusing the minutiae of the Registrar's execution of her official duties. The defendants dispute that the Registrar or the Electoral Board have misapplied the law in any fashion, but even assuming, *arguendo*, that some error could be shown, the issues described in the Complaint do not give rise to a First Amendment claim.

   c. **There is no due process interest in obtaining candidacy for office under established law, and the Complaint likewise fails to articulate any *de facto* or *de jure* disparate treatment sufficient to give rise to an equal protection claim**

Due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Thus, the threshold question in adjudicating the plaintiffs' due process claim is whether they possessed a liberty or property interest. The Supreme Court has long held that "an unlawful denial by state action of a

right to state political office is not a denial of a right of property or liberty secured by the due process clause." *Snowden v. Hughes*, 321 U.S. 1, 7 (1944) (citing *Taylor v. Beckham*, 178 U.S. 548, 577 (1900)). In line with these cases, the plaintiffs' due process claim necessarily fails. *See Wright*, 478 F. Supp. at 473.

Similarly, the plaintiffs' equal protection claim fails. The plaintiffs allege that the Registrar's restriction of petition signatures to "qualified voters," as mandated by the Code, discriminates against petition signers on the basis of those who have moved away from their precinct versus those who have moved within their precinct. This argument fails to identify a suspect classification requiring this Court to strictly scrutinize the State policy. It has long been recognized that states have "an important interest in requiring third party and independent candidates to demonstrate a modicum of support before placing their names on the general election ballot." *E.g., Fishbeck v. Hechler*, 85 F.3d 162 (4th Cir. 1996). "Under rational basis review, '[c]lassifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Marcellus v. Va. State Bd. of Elections*, 2016 U.S. Dist. LEXIS 28204, at *24 (E.D. Va. Mar. 4, 2016) (citations omitted). Accordingly, the plaintiffs have failed to articulate an equal protection violation.

### IV. Conclusion

For the foregoing reasons, the defendants ask that the plantiffs' motion for a temporary restraining order be denied.

Date: September 9, 2016                    Respectfully submitted,

                                           J. KIRK SHOWALTER
                                           C. STARLET STEVENS
                                           CECILIA A.B. DABNEY


                                           By: __/s/ Michael G. Matheson_____
                                                         Counsel

                                           William W. Tunner (VSB No. 38358)
                                           Michael G. Matheson (VSB No. 82391)
                                           *Thompson*McMullan, P.C.
                                           100 Shockoe Slip, Third Floor
                                           Richmond, Virginia 23219
                                           Tel.: (804) 698-5933
                                           Fac.: (804) 780-1813
                                           wtunner@t-mlaw.com
                                           mmatheson@t-mlaw.com

                                           *Counsel for J. Kirk Showalter, C. Starlet Stevens, and Cecilia A.B. Dabney*



The defendant, Ophelia Daniels, also joined in this memorandum.



/s/ William Etherington (with permission)

William Fisher Etherington
Leslie A. Winneberger
Beal Davidson Etherington & Morris PC
701 E. Franklin Street, Suite 1200
Richmond, Virginia 23219
Tel.: 804-788-1500
Fax: 804-788-0135
wetherington@bealelaw.com
lwinneberger@bealelaw.com

*Counsel for Ophelia Daniels*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following counsel of record via facsimile this 9th day of September, 2016:

Mark S. Paullin
Law Office of Mark Paullin
575-A Southlake Blvd.
Richmond, Virginia 23236

*Counsel for Plaintiffs*

Harold Edward Johnson
Erica Brittany Mitchell
Williams Mullen
200 South 10th Street, 16th Floor
Richmond, Virginia 23219

*Counsel for James Alcorn, Clara Belle Wheeler,
Singleton McAllister, and Edgardo Cortes*

                                                                      /s/ Michael G. Matheson
                                                                           Michael G. Matheson